[Cite as *Pfeiffer-Fiala v. Kent State Univ.*, 2015-Ohio-5558.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CAROLYN PFEIFFER-FIALA

       Plaintiff

       v.

KENT STATE UNIVERSITY

       Defendant

Case No. 2013-00656

Judge Patrick M. McGrath
Magistrate Robert Van Schoyck

DECISION

{¶1} On November 7, 2014, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). With leave of court, plaintiff filed a response on December 1, 2014. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶4} Plaintiff brings this action asserting claims of breach of contract, defamation, negligent supervision, and unjust enrichment. The action arises out of plaintiff's dismissal from a Ph.D. program in defendant's School of Lifespan Development and Education, resulting from a determination that plaintiff violated defendant's "Administrative Policy Regarding Student Cheating and Plagiarism," a copy of which is attached to the complaint. Through its motion, defendant moves for summary judgment as to all claims.

{¶5} Regarding plaintiff's breach of contract claim, "[i]t is axiomatic that '* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308 (10th Dist.1992), quoting *Behrend v. State*, 55 Ohio App.2d 135, 139 (10th Dist.1977). "This contract is typically found in a handbook, catalogue, or other guideline." *Tate v. Owens State Community College*, 10th Dist. Franklin No. 10AP-1201, 2011-Ohio-3452, ¶ 21. "However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory." *Lewis v. Cleveland State Univ.*, 10th Dist. Franklin No. 10AP-606, 2011-Ohio-1192, ¶ 14.

{¶6} "A court's standard for reviewing the academic decisions of a college 'is not merely whether the court would have decided the matter differently but, rather, whether the faculty action was arbitrary and capricious.'" *Jefferson v. Univ. of Toledo*, 10th Dist. Franklin No. 12AP-236, 2012-Ohio-4793, ¶ 16, quoting *Bleicher* at 308, citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91 (1978); *see also Stratton v. Kent State Univ.*, 10th Dist. Franklin No. 02AP-887, 2003-Ohio-1272, ¶ 40. "A trial court must defer to the academic decisions of colleges unless the decisions so substantially depart from accepted academic norms as to demonstrate that the committee or person responsible did not actually exercise professional judgment." *Eckel v. Bowling Green State Univ.*, 10th Dist. Franklin No. 11AP-781, 2012-Ohio-3164, ¶ 52; *see also McDade v. Cleveland State Univ.*, 10th Dist. Franklin No. 14AP-275, 2014-Ohio-4026, at ¶ 27.

**{¶7}** "To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Prince v. Kent State Univ.*, 10th Dist. Franklin No. 11AP-493, 2012-Ohio-1016, ¶ 24. "Contract interpretation is a matter of law, not a question of fact." *Harbor View v. Jones*, 10th Dist. Franklin Nos. 10AP-356 & 10AP-357, 2010-Ohio-6533, ¶ 64. "Courts construe contracts to give effect to the intent of the parties and such intent is presumed to be in the language used in the contract." *Boggs v. Columbus Steel Castings Co.*, 10th Dist. Franklin No. 04AP-1239, 2005-Ohio-4783, ¶ 6.

**{¶8}** The complaint sets forth two counts for breach of contract. In the first count, plaintiff claims that, by finding she had committed plagiarism and consequently sanctioning her, defendant breached the terms of the Administrative Policy Regarding Student Cheating and Plagiarism.

**{¶9}** There is no dispute that on or about November 19, 2012, plaintiff presented a copy of her dissertation proposal to her dissertation committee, comprised of Dr. Sanna Harjusola-Webb, Dr. Kristie Pretti-Frontczak, and Dr. Melody Tankersley; Harjusola-Webb is an Assistant Professor, and Pretti-Frontczak and Tankersley then served as Professors. Harjusola-Webb and Pretti-Frontczak each explained in their depositions, transcripts of which plaintiff submitted, that a dissertation proposal consists of the first two chapters of the dissertation. According to the deposition testimony of Harjusola-Webb, Pretti-Frontczak, and Tankersley, plaintiff presented them with the proposal in question in order to seek their approval to move on to the next phase in the dissertation process, which would entail independent research and data collection, and then writing the rest of the dissertation.

**{¶10}** Harjusola-Webb testified that when she read the dissertation proposal, she became concerned upon recognizing some of the material as having been taken without credit from a thesis with which she was familiar. Harjusola-Webb testified that she then expressed her concerns to Pretti-Frontczak and to their program director, who referred her to the Administrative Policy Regarding Student Cheating and Plagiarism.

**{¶11}** Pretti-Frontczak testified that upon hearing Harjusola-Webb's concerns, she selected portions of the dissertation proposal and searched for them on the Google Internet search engine. Pretti-Frontczak stated that this process revealed what she considered to be extensive plagiarism in the document, and she notified

Harjusola-Webb and Tankersley of her findings. Tankersley stated that Harjusola-Webb and Pretti-Frontczak were the co-directors of the committee, and that after learning of their concerns, she recalled the three of them discussing the matter with the department chair.

{¶12} It is undisputed that the dissertation committee met with plaintiff on November 21, 2012, and notified her of the plagiarism charges. Pretti-Frontczak testified that she and Harjusola-Webb had at least one more meeting with plaintiff, which plaintiff attended with counsel, and that the committee eventually notified plaintiff that the matter was being referred to defendant's university-wide Academic Hearing Panel.

{¶13} There is no dispute that the plagiarism charges came on for a hearing before the Academic Hearing Panel, and that plaintiff was indeed found to have violated the Administrative Policy Regarding Student Cheating and Plagiarism. Pretti-Frontczak testified that the Academic Hearing Panel sought a recommendation from the dissertation committee on potential sanctions, and that, due to the extent of the plagiarism, it was recommended that plaintiff be dismissed from the university. Pretti-Frontczak explained that the problems with the dissertation proposal were significant and concerned more than just missing citations, as even if all the uncredited ideas and work of others had been properly credited, the totality of the uncredited material demonstrated an overall lack of original ideas or work on plaintiff's part. Similarly, Harjusola-Webb testified that she felt plaintiff's dismissal was warranted because of the degree of plagiarism and also the context in which it occurred, being at an important stage in the dissertation process where plaintiff was seeking approval to move on to the data collection phase. Tankersley testified that she too felt dismissal was appropriate.

{¶14} It is not in dispute that as a result of the hearing the Academic Hearing Panel decided to dismiss plaintiff from the university, that plaintiff appealed the decision to the Provost, and that the Provost affirmed the decision on appeal.

{¶15} The Administrative Policy Regarding Student Cheating and Plagiarism defines plagiarism as follows:

{¶16} "[B](2) 'Plagiarize' means to take and present as one's own a material portion of the ideas or words of another or to present as one's own an idea or work

derived from an existing source without full and proper credit to the source of the ideas, words, or works.   As defined, plagiarize includes, but is not limited to:

{¶17} "(a) The copying of words, sentences and paragraphs directly from the work of another without proper credit;

{¶18} "(b) The copying of illustrations, figures, photographs, drawings, models, or other visual and nonverbal materials, including recordings, of another without proper credit; and

{¶19} "(c) The presentation of work prepared by another in final or draft form as one's own without citing the source, such as the use of purchased research papers."

{¶20} There is no dispute that, among other evidence, the Academic Hearing Panel considered a table comparing selected text from chapter one of the dissertation proposal to what are identified in the table as the uncredited "original sources." Although the copy of the table submitted by defendant also includes examples of purported plagiarism in chapter two of the dissertation proposal, the dissertation proposal appendices, and plaintiff's "Written Comprehensive Exams," plaintiff submitted an affidavit wherein she avers that only the table concerning chapter one was offered as evidence before the Academic Hearing Panel.   Accordingly, for purposes of Civ.R. 56, the court shall consider only the table concerning chapter one.

{¶21} Both parties submitted copies of the table pertaining to chapter one, which, while not identical are substantially the same, but for purposes of Civ.R. 56, the court shall consider the copy submitted by plaintiff.   The table sets forth 14 examples of text from chapter one, along with comparisons to original sources that plaintiff did not credit.  Unattributed material from one original source in particular, the "Tennyson thesis," is included at several points in chapter one.   Rather than crediting Tennyson's work, plaintiff changed some of the wording and included Tennyson's own citations. Defendant contends that the table demonstrates that plaintiff presented the work of others as her own, and indeed used the same structure and citations of others' work to make it appear as if it were her own, and that the Academic Hearing Panel therefore appropriately found that she violated the Administrative Policy Regarding Student Cheating and Plagiarism.

{¶22} Plaintiff chiefly argues that the portions of the dissertation proposal at issue do not amount to plagiarism because the proposal was a "draft" subject to revision and editing, such that she should have been permitted to add citations at any point up until

presenting the final, or defense copy of her completed dissertation. According to plaintiff's affidavit, in the course of her student career with defendant, it was commonplace to present documents "where citation was either incomplete or missing" and "to cut text, re-write, correct and add citation throughout the editing process up until a final submission." (Affidavit, ¶ 11-12.) Plaintiff also avers that she had helped edit other students' work, and that the editing process included the correction of and insertion of citations. Plaintiff thus asserts that she had developed an understanding that she would not stand to be accused of plagiarism at this stage of the dissertation process, where she was presenting the first and second chapters for approval by the dissertation committee. In support of her position, plaintiff submitted a report by Professor Patrick M. Scanlon of the Department of Communication at the Rochester Institute of Technology, but the report is not authenticated or otherwise admissible under Civ.R. 56.

{¶23} The definition of "plagiarize" in the Administrative Policy Regarding Student Cheating and Plagiarism does not make the distinction advanced by plaintiff, that is, that it should encompass only the final, or defense copy of her dissertation. Rather, it means "to take and present as one's own a material portion of the ideas or words of another or to present as one's own an idea or work derived from an existing source without full and proper credit to the source of the ideas, words, or works." And, as defendant points out, the definition goes on to expressly include the "presentation of work prepared by another in final or draft form as one's own without citing the source * * *." Moreover, plaintiff has not provided evidence of a mutual agreement to alter the express terms of the Administrative Policy Regarding Student Cheating and Plagiarism such that it would not apply to the document she presented to the dissertation committee.

{¶24} Plaintiff points to the fact that the Guidelines for Preparation of Theses and Dissertations published by defendant's College of Education, Health, and Human Services suggests that students have another person help them edit dissertations and theses, and includes statements such as that the "[f]inal copy should be error free" and that "[p]roduction of high-quality final dissertation or thesis copy is the responsibility of the degree candidate," as plaintiff contends that these statements reflect an intent that the absence of citations not be held against students until submission of the defense copy of their dissertation. The relevant language in the guidelines, however, concerns

matters of style and cannot reasonably be read to suggest that the ideas or work of others need not be credited at all until submission of the final copy of a dissertation, and as Pretti-Frontczak testified the problems with the dissertation proposal went beyond merely missing citations. Plaintiff also argues that there are common terms of art that do not require citation, but she has not presented any evidence to suggest that the examples in the table from chapter one, which in multiple instances are several sentences long, may be considered terms of art in her field of study. Plaintiff further states in her affidavit that Harjusola-Webb had referred her to the Tennyson thesis "for review and incorporation into my dissertation proposal," but there is no suggestion of any agreement that plaintiff could take ideas or work from the Tennyson thesis without giving Tennyson credit and then present that work to the committee in the form of a dissertation proposal under plaintiff's name.

{¶25} Based upon the table submitted by plaintiff setting forth examples of where she presented the dissertation committee with the ideas or work of others without crediting them, and giving the deference afforded to academic decisions, reasonable minds must conclude that the Academic Hearing Panel's decision finding that plaintiff violated the Administrative Policy Regarding Student Cheating and Plagiarism was not arbitrary and capricious and cannot support a claim for breach of contract.

{¶26} With respect to the resulting sanctions imposed by the Academic Hearing Panel, plaintiff argues that her dismissal was disproportionate to the seriousness of the offense, and that she is the only student who was ever dismissed for plagiarism in connection with a dissertation proposal. The evidence before the court, however, does not demonstrate that the sanctions substantially departed from academic norms, and it cannot be reasonably construed to suggest an absence of professional judgment on the part of defendant's academic professionals. According to plaintiff, even if she was properly found to have violated the plagiarism policy, a lesser, alternative sanction should have been imposed. In particular, plaintiff argues that she should have been allowed to attend a remedial "plagiarism school" program provided for in the Administrative Policy Regarding Student Cheating and Plagiarism, and in support she submitted deposition testimony from a current Ph.D. student, Ashley Lyons, who stated that she is aware of defendant sanctioning master's degree students for plagiarism by referring them to plagiarism school. The policy, however, provides that plagiarism school may be offered under certain circumstances at the request of the instructor in

"less severe cases of student plagiarism," but plaintiff has not identified any language in the policy or other contract documents that would have obligated defendant to refer her to plagiarism school rather than dismiss her. In fact, the policy expressly provides that dismissal from the university is a sanction that the Academic Hearing Panel has the authority to impose.

{¶27} According to plaintiff, the Academic Hearing Panel's decision is nonetheless invalid to the extent that the Administrative Policy Regarding Student Cheating and Plagiarism provides for students being accused of plagiarism to receive a "Cheating/Plagiarism Sanction Form" prepared by their instructor, but she did not receive one. "To recover for breach of contract, a claimant must prove damage as a result of the breach." *Leiby v. Univ. of Akron*, 10th Dist. Franklin No. 05AP-1281, 2006-Ohio-2831, ¶ 24; *see also Staton v. Miami Univ.*, 10th Dist. Franklin No. 00AP-410 (Mar. 27, 2001). In this case, even if the policy did require that plaintiff receive such a form and one was not provided to her, it has not been shown that she may prove any resulting damages. There is no dispute that the dissertation committee, from which the plagiarism allegations arose, met with plaintiff in person two days after she presented the committee with the dissertation proposal, and the committee members notified her at that time that they were accusing her of plagiarism. Pretti-Frontczak testified in her deposition that she and Harjusola-Webb met at least once more with plaintiff, who had retained counsel by that point, and that plaintiff was notified of the committee's decision to refer the matter to the Academic Hearing Panel pursuant to the Administrative Policy Regarding Student Cheating and Plagiarism. Plaintiff has not identified any information which is to be included in a Cheating/Plagiarism Sanction Form that she did not receive at least oral notice of, nor has she offered any specific evidence or argument demonstrating how the absence of the form prejudiced her. Although plaintiff's affidavit includes an averment that she was not provided with the table of examples taken from chapter one of the dissertation proposal until she appeared for the hearing before the Academic Hearing Panel, she has not identified any language in the Administrative Policy Regarding Student Cheating and Plagiarism, relative to a Cheating/Plagiarism Sanction Form or otherwise, that entitled her to be furnished with that document at an earlier juncture.

{¶28} In the second count for breach of contract, plaintiff claims that defendant had a duty under some unspecified rules to award her an Education Specialist Degree

in the fall of 2012, but failed to do so. Plaintiff has provided no argument or evidence specific to this claim, however, nor are there any contract documents attached to the complaint pursuant to Civ.R. 10(D) other than the Administrative Policy Regarding Student Cheating and Plagiarism. To the extent that this claim arises from sanctions imposed by the Academic Hearing Panel under the Administrative Policy Regarding Student Cheating and Plagiarism, as the court has previously found, defendant is entitled to judgment as a matter of law.

{¶29} Turning to plaintiff's claim for defamation, "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "'Slander' refers to spoken defamatory words, while 'libel' refers to written or printed defamatory words." *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. Franklin No. 10AP-565, 2011-Ohio-777, ¶ 8.

{¶30} "To succeed on a defamation claim, a plaintiff must establish: (1) a false statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-902, 2008-Ohio-3691, ¶ 26.

{¶31} Defendant argues, among other things, that any statement by its employees to the effect that plaintiff committed plagiarism was privileged. Privileged statements are those that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975).

**{¶32}** "A qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant." *DeGarmo v. Worthington City Schools Bd. of Edn.*, 10th Dist. Franklin No. 12AP-961, 2013-Ohio-2518, ¶ 18. "Actual malice" means "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d. 111, 116 (1991).

**{¶33}** Based on the evidence provided by the parties under Civ.R. 56, reasonable minds can only conclude that any statements by members of the dissertation committee, the Academic Hearing Panel, or other employees of defendant to the effect that plaintiff committed plagiarism were privileged and were not made with actual malice. "Additionally, a statement in a judicial or quasi-judicial proceeding is absolutely privileged and may not form the basis for a defamation action as long as the allegedly defamatory statement is reasonably related to the proceedings." *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043, ¶ 19 (holding that a student disciplinary proceeding was quasi-judicial). Similar to the proceedings in *Savoy*, the proceedings before the Academic Hearing Panel involved plaintiff receiving notice and a hearing, and, according to the complaint, she was able to present evidence at the hearing. Accordingly, it must be concluded that the proceedings were quasi-judicial in nature. Inasmuch as there has been no evidence presented of statements before the Academic Hearing Panel that were not reasonably related to the proceedings, the absolute privilege applies.

**{¶34}** Additionally, plaintiff asserts in her memorandum that Pretti-Frontczak "may have told others (Sophie Hubble, Sarah Jackson, or Kathy Harris) not to work with Plaintiff," but Pretti-Frontczak stated in her deposition that she does not recall any such conversation with those individuals (Deposition, p. 74), and plaintiff has not produced affidavits from those individuals or other admissible evidence to demonstrate that such conversations occurred. While plaintiff's affidavit states that Harris is a "colleague" who told her that Pretti-Frontczak "had indicated to her that working with me would be detrimental to her career," this constitutes hearsay. *See Kinney v. Kroger Co.*, 10th Dist. Franklin No. 01AP-443 (Dec. 11, 2001).

**{¶35}** With respect to plaintiff's claim of negligent supervision, plaintiff essentially claims that defendant failed to supervise those who allegedly breached the Administrative Policy Regarding Student Cheating and Plagiarism. As the court has

previously determined, defendant is entitled to judgment as a matter of law on the breach of contract claims, and, furthermore, plaintiff has not presented evidence demonstrating that defendant breached any duty separate from those established by the parties' contractual relationship. It is well-settled that "a tort claim based upon the same actions as those upon which a breach of contract claim is based will exist independently of the contract action 'only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract resulted.'" *425 Beecher, LLC v. Unizan Bank*, 186 Ohio App.3d 214, 2010-Ohio-412, ¶ 51 (10th Dist.), quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (10th Dist.1996). Moreover, plaintiff's alleged damages are economic in nature, and "the economic loss rule generally prevents recovery in tort of damages for purely economic losses." *Id.* at ¶ 49; *see also Carasalina, LLC v. Smith Phillips & Assocs.*, 10th Dist. Franklin No. 13AP-1027, 2014-Ohio-2423, ¶ 25. Thus, a negligent supervision claim cannot be sustained.

{¶36} Finally, plaintiff's claim for unjust enrichment is based upon defendant's alleged retention of tuition and fees paid by plaintiff, as well as allegations that defendant "refuses to allow plaintiff to complete her Ph.D. or award her an Ed.S." "Unjust enrichment is an equitable doctrine to justify a quasi contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Struna v. Ohio Lottery Comm.*, 10th Dist. Franklin No. 03AP-787, 2004-Ohio-5576, ¶ 22, quoting *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 38. "A plaintiff seeking to recover under unjust enrichment or quantum meruit must establish that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to permit the defendant to retain the benefit without payment." *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 37 (10th Dist.). "Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract." *Cent. Allied Ents., Inc. v. Adjutant General's Dept.*, 10th Dist. Franklin No. 10AP-701, 2011-Ohio-4920, ¶ 39; *see also Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. Franklin App. No. 08AP-396, 2008-Ohio-6427, ¶ 23.

{¶37} Here, it is undisputed that the relationship and obligations of the parties were contractual. The evidence presented by the parties does not reasonably permit an inference of bad faith, fraud, or some other illegality. Consequently, the doctrine of unjust enrichment does not apply.

{¶38} Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. As a result, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

_____
PATRICK M. MCGRATH
Judge

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CAROLYN PFEIFFER-FIALA

      Plaintiff

      v.

KENT STATE UNIVERSITY

      Defendant

Case No. 2013-00656

Judge Patrick M. McGrath
Magistrate Robert Van Schoyck

JUDGMENT ENTRY

{¶39} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All other pending motions are DENIED as moot. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties, notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Christopher L. Bagi
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Oliver Koo
Peter P. Lorenz
250 South Chestnut Street, Suite 23
Ravenna, Ohio 44266

**Filed January 26, 2015**
**Sent To S.C. Reporter 12/31/15**